UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH HAMMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-00021-TWP-MPB |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Joseph Hammond ("Mr. Hammond") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[1] For the reasons stated below, the Court **REMANDS** the decision of the Commissioner for further consideration.

I. **BACKGROUND**

**A.   Procedural History**

On January 31, 2012, Mr. Hammond protectively filed applications for DIB and SSI, alleging a disability onset date of January 28, 2011, due to his anxiety and depression, and later adding high blood pressure, sleep apnea, and residuals from treatment for prostate cancer as further bases for his disability. His claims were initially denied on March 21, 2012, and again on

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

reconsideration on June 7, 2012. Mr. Hammond filed a written request for a hearing on July 9, 2012. On April 15, 2013, a hearing was held before Administrative Law Judge James R. Norris (the "ALJ"). Mr. Hammond was present and represented by counsel, J. Frank Hanley, II. A medical expert, Marc O. Farber, M.D. ("Dr. Farber"), testified at the hearing. A medical expert psychologist, Jack E. Thomas, Ph.D. ("Dr. Thomas"), also testified at the hearing. Dr. Thomas and the ALJ noted the mental health records were outdated, and the ALJ determined that further development of the record was necessary. Thus, a post-hearing psychological evaluation was performed, and the evaluation record was submitted to the ALJ and Dr. Thomas.

A supplemental hearing was held before the ALJ on July 2, 2013. Mr. Hammond was again present and represented by counsel. Dr. Thomas again appeared and testified at the hearing. Michael L. Blankenship, an impartial vocational expert, appeared and testified at the hearing. On August 9, 2013, the ALJ denied Mr. Hammond's applications for DIB and SSI. Following this decision, Mr. Hammond requested review by the Appeals Council on October 15, 2013. On December 4, 2014, the Appeals Council denied Mr. Hammond's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On January 6, 2015, Mr. Hammond filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.**     **Factual Background**

At the time of his alleged disability onset date, Mr. Hammond was 59 years old, and he was 62 years old at the time of the ALJ's decision. Mr. Hammond is currently 64 years old. He attained a high school education by obtaining his GED. Prior to December 2011, Mr. Hammond had an employment history of working as a grocery store stocker (a stock clerk) and a warehouse worker and deliveryman in the heating and air conditioning field (a stores laborer).

Mr. Hammond was admitted to St. Vincent Stress Center on January 21, 2011, because of his mental health status. He was depressed and had attempted suicide. Upon admission to the stress center, Mr. Hammond was assigned a global assessment of functioning score of 30. When he was released from the stress center twelve days later, his global assessment of functioning score was 70. While at the stress center, Mr. Hammond was diagnosed with depression and hypertension, and it was noted in his treatment notes that he had a history of hypertension, alcohol abuse, and marijuana abuse. He received group and individual therapy and various medications were used. Upon discharge from the stress center on February 2, 2011, Mr. Hammond was prescribed Lisinopril, Prozac, and Remeron and was directed to have follow-up therapy and counseling at another mental health facility. He had his first appointment at Aspire Mental Health Center the day after his discharge. He continued taking his medications for depression and anxiety and receiving mental health treatment from various counselors, psychiatrists, and psychologists.

On February 28, 2011, Mr. Hammond presented to a primary care clinic to establish care for his hypertension. It was noted that his hypertension was well controlled with Lisinopril, and he was encouraged to continue using the medication. On March 6, 2012, Mr. Hammond underwent a sleep study test. He was diagnosed with mild obstructive sleep apnea. It was recommended that Mr. Hammond use a CPAP machine to address his sleep apnea.

Soon thereafter, on March 10, 2012, as part of the disability determination process, Elizabeth Brater, M.D. ("Dr. Brater"), completed a consultative examination of Mr. Hammond for his "depression and mental disorder." Mr. Hammond admitted that he could stand several hours at a time, usually would stand about two hours in an eight-hour period, walk one mile, sit for sixty minutes at a time, and lift about twenty-five pounds with his left arm and about twenty-five pounds with his right arm. He also stated that he could sweep, mop, vacuum, cook, wash dishes, and shop

in short intervals. Dr. Brater reported that upon physical examination Mr. Hammond had a normal gait and station, could get on and off the examination table without difficulty, and bend over and attend to his footwear without difficulty. Mr. Hammond's musculoskeletal examination was unremarkable with mostly normal findings. He had full muscle strength with no atrophy, normal grip strength, and negative straight leg raise testing. Dr. Brater noted her medical impressions of depression, anxiety, high blood pressure, insomnia, sleep apnea, and a positive Romberg's sign. Dr. Brater opined that Mr. Hammond's limitations appeared to be psychiatric in nature and that he could sit, stand, and walk eight hours in an eight-hour workday with regular breaks; could be expected to lift twenty-five pounds occasionally; could bend, stoop, crouch, kneel, and crawl occasionally; could reach, handle, feel, grasp, and finger frequently; and should avoid hot and cold temperature extremes.

On March 21, 2012, state agency medical consultant, Jonathon Sands, M.D., opined that Mr. Hammond did not allege a physical impairment in his disability applications and did not have a severe physical impairment. In March 2012, Mr. Hammond was diagnosed with prostate cancer, and his March 28, 2012 bone scan showed no metastatic disease and only some mild degenerative changes of the shoulders and knees, and three healing left-rib fractures. Mr. Hammond underwent surgery for prostate cancer on April 25, 2012, to remove his prostate. On June 7, 2012, a second state agency medical consultant, Mark Ruiz, M.D., opined that Mr. Hammond had stage 2 prostate cancer without metastatic disease, but his physical impairments were not expected to be severe for twelve months or longer. During a post-operative follow-up on August 1, 2012, Theodore Holland, M.D., reported that Mr. Hammond's incision had healed nicely and that Mr. Hammond was back to his normal activities and endurance and had no activity restrictions.

Prior to being diagnosed with prostate cancer and undergoing surgery to remove his prostate, Mr. Hammond completed an adult function report for his disability applications on February 11, 2012. He noted that he lived alone in a house and that he cared for his personal needs without difficulty. He noted that he cared for his dog, walked, rode his bicycle, prepared meals, cleaned, washed laundry, shopped, mowed grass, and did yard work. His hobbies included watching television, reading, and participating in outdoor activities such as camping, fishing, and hiking. Mr. Hammond indicated that he attends church and volunteers his time. Regarding limitations to his daily activities, Mr. Hammond did not indicate that he had any difficulty with lifting.

During the hearing before the ALJ on April 15, 2013, Dr. Farber testified that Mr. Hammond had mild sleep apnea and prostate cancer for which he underwent surgery. Dr. Farber stated that an August 2012 post-operative medical note indicated that Mr. Hammond's tissue had healed, he was back to performing his normal activities, he was healed, and his endurance had returned. Dr. Farber then testified that Mr. Hammond should be back to where he was before the prostate cancer diagnosis and surgery, there were no physical limitations placed on him, and any limitations or issues were mostly psychological. He testified, "I don't have anything else that would lead me to conclude otherwise." (Filing No. 12-2 at 79.)

After the ALJ asked questions of Dr. Farber, Mr. Hammond's attorney asked Dr. Farber about Dr. Brater's March 2012 consultative examination of Mr. Hammond, specifically Dr. Brater's opinion that Mr. Hammond would be limited to lifting twenty-five pounds occasionally. In response to the question about lifting twenty-five pounds occasionally, Dr. Farber reviewed Dr. Brater's opinion aloud:

> Patient has the ability to sit, stand and walk eight hours in an eight hour work day regular breaks [sic]. He should be expected to lift 25 pounds occasionally. Postural

5

> limitations of bending, stooping, kneeling, crouching, kneeling [sic], crawling. Well, there's no reason for that. But I suppose if you want him limited to medium work, we could do it based on that.

([Filing No. 12-2 at 81](#).)

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold

an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Mr. Hammond met the insured status requirement of the Act for DIB through December 31, 2015. The ALJ then began the five-step analysis. At step one, the ALJ found that Mr. Hammond had not engaged in substantial gainful activity since January 28, 2011, the alleged disability onset date. At step two, the ALJ found that Mr. Hammond had the following severe impairments: high blood pressure, sleep apnea, residuals from treatment for prostate cancer, depression, and anxiety. At step three, the ALJ concluded that Mr. Hammond does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Mr. Hammond has an RFC to perform "a limited range of medium work" with the following limitations: "[he] is restricted to performing simple, repetitive tasks, but only routine tasks with no assembly line work tasks, only superficial contact with supervisors and coworkers and no contact with the public. The work must be performed away from other people." (Filing No. 12-2 at 50.)

At step four, the ALJ determined that Mr. Hammond was unable to perform his past work as a stock clerk and a stores laborer. He was limited to performing unskilled work. At step five, the ALJ determined that Mr. Hammond is not disabled because there are jobs that exist in significant numbers in the national economy that Mr. Hammond could perform, considering his age, education, past work experience, and RFC. Therefore, the ALJ denied Mr. Hammond's applications for DIB and SSI because he is not disabled.

## IV. DISCUSSION

In his Complaint for judicial review, Mr. Hammond asserts a single basis for his request to remand this case for further proceedings. He argues that the ALJ's decision that he could perform "medium work" is not supported by substantial evidence because the evidence shows he could only occasionally lift twenty-five pounds.

Mr. Hammond asserts that the ALJ adopted the opinions of two medical experts that he was capable of occasionally lifting twenty-five pounds and then erroneously determined that he was capable of performing medium level work, which requires frequent lifting of twenty-five pounds. He argues that:

> Substantial evidence does not support the ALJ's finding that Hammond could do all the lifting that the full range of "medium" work requires. The ALJ essentially agreed with medical expert Dr. Farber's opinions, but Dr. Farber opined that Hammond could not perform the lifting that the full range of "medium" work requires.

(Filing No. 14 at 6.) (Emphasis in original.) Mr. Hammond explains that because the ALJ determined he was capable of medium work, by definition, the ALJ determined that Mr. Hammond could lift twenty-five pounds frequently. However, the ALJ adopted the opinion of Dr. Farber that Mr. Hammond could lift twenty-five pounds only occasionally. Thus, the evidence on which the

9

ALJ relied does not support the conclusion that Mr. Hammond can perform the frequent lifting of twenty-five pounds required by medium work.

Mr. Hammond further argues that the ALJ did not explain that he was deviating from or rejecting the medical opinions regarding Mr. Hammond's ability to only occasionally lift twenty-five pounds. The ALJ in fact noted that Dr. Farber's opinion was more probative and had a better foundation, and so he gave that opinion greater weight when determining Mr. Hammond's RFC.

The Commissioner responds to Mr. Hammond's argument by explaining that his argument mischaracterizes the testimony of Dr. Farber. The Commissioner explains that Dr. Farber testified that Mr. Hammond had mild sleep apnea and prostate cancer and that a surgery to remove the prostate was successfully performed. Dr. Farber then testified that Mr. Hammond healed fully from the surgery, he was back to performing his normal activities, and his endurance had returned. Dr. Farber testified that he should be back to where he was before the surgery, and he did not see any other evidence to conclude otherwise. Dr. Farber added that Mr. Hammond would not have any physical limitations.

The Commissioner explains that, immediately after this testimony from Dr. Farber, Mr. Hammond's attorney questioned Dr. Farber about Dr. Brater's opinion that Mr. Hammond would be limited to lifting twenty-five pounds only occasionally. Dr. Farber reviewed aloud Dr. Brater's opinion that Mr. Hammond should be expected to lift twenty-five pounds occasionally, and then Dr. Farber openly disagreed with Dr. Brater's opinion because it was not supported, testifying, "[w]ell, there's no reason for that." (Filing No. 12-2 at 81.) Thus, the Commissioner points out, Dr. Farber did not agree that Mr. Hammond had any physical limitations. Dr. Farber testified that if Mr. Hammond's attorney wanted Mr. Hammond limited to medium work, that could be done based on Dr. Brater's opinion. However, when read in context, Dr. Farber did not agree with Dr.

10

Brater's opinion and did not opine that Mr. Hammond should have any physical limitations, including any restrictions to lifting twenty-five pounds occasionally. The Commissioner asserts that for this reason the ALJ's RFC determination was consistent with and supported by Dr. Farber's expert opinion.

The Court turns to the decision of the ALJ and the Social Security regulations to resolve the issue regarding Mr. Hammond's RFC to perform medium work. Regarding the physical exertion requirements of work, the Code of Federal Regulations classifies work as "medium work" if it "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). Social Security Ruling 83-10 notes,

> Sedentary exertional demands are less than light, which are, in turn, less than medium. In addition, RFC generally represents an exertional work capability for all work at any functional level(s) below that used in the table under consideration.
>
> The exertional requirements of work at a particular functional level are the same regardless of whether the work is skilled, semi-skilled, or unskilled. Therefore, RFC alone never establishes the capability for skilled or semiskilled work.

Ruling 83-10 points out the importance of considering all factors when determining a claimant's ability to adjust to work, not just RFC or the physical exertional abilities of a claimant. "The regulations provide that older age is an increasingly adverse vocational factor for persons with severe impairments. The chronological ages, 45, 50, 55, and 60 may be critical to a decision." SSR 83-10.

> Regarding the primary strength activity of lifting, the Ruling explains,
>
> The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. . . . Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

*Id.* "'Frequent' means occurring from one-third to two-thirds of the time," and "'[o]ccasionally' means occurring from very little up to one-third of the time." *Id.* The Social Security regulations and rulings make a clear distinction between "frequent" and "occasional," and medium work unequivocally requires the ability to lift up to twenty-five pounds frequently.

Mr. Hammond argues that the ALJ adopted Dr. Brater's and Dr. Farber's expert medical opinions that he was limited to only occasional lifting of twenty-five pounds and then erred by limiting him to medium work, which requires frequent lifting of twenty-five pounds. The Commissioner argues that Dr. Farber opined he had no physical limitations and was not limited to occasional lifting of twenty-five pounds, and the ALJ relied on Dr. Farber's opinion when assigning an RFC of medium work; thus, the decision is supported by substantial evidence.

A review of Dr. Farber's testimony in its entirety and in context reveals that Dr. Farber did not provide an expert opinion that Mr. Hammond had physical limitations or could only occasionally lift twenty-five pounds. He did testify that Mr. Hammond potentially could be limited to medium work based on Dr. Brater's opinion, but he did not necessarily adopt a "medium work" opinion. However, the ALJ gave great weight to Dr. Farber's opinion and described Dr. Farber's opinion in terms of an ability to only occasionally lift twenty-five pounds.

While Dr. Farber did not agree with Dr. Brater that there was a physical limitation to only occasional lifting of twenty-five pounds, the ALJ explicitly described Dr. Farber's opinion as including an "occasional" lifting limitation. The ALJ's decision explains,

> A consultative examiner, Elizabeth Brater, M.D., reported he could sit, stand and walk eight hours during an eight-hour workday with regular breaks, adding that he could be expected to lift twenty-five pounds occasionally, could occasionally bend, stoop, crouch, kneel and crawl, could frequently engage in fine and gross manipulation, reaching, handling, feeling, grasping and fingering, but not tolerate hot and cold temperatures (Exhibit 4F).

> A medical expert, Marc O. Farber, M.D., testified that the claimant is restricted to performing medium work at this point, indicating that he should be able to lift up to twenty-five pounds occasionally. Dr. Farber did not endorse the remainder of the limitations identified by Dr. Brater. Dr. Farber has a better foundation for his opinion, which is very consistent with the objective medical evidence, as his opinion is associated with a good explanation. In contrast, Dr. Brater provides very little in the way of explanation. For example, Dr. Brater does not explain why the claimant would be limited to frequent fine and gross manipulation, handling, feeling and fingering (as opposed to constant). Dr. Farber's opinion is the more probative of the opinions for these reasons and outweighs Dr. Brater's opinion.

(Filing No. 12-2 at 53.) It is clear that the ALJ based his RFC determination on Dr. Farber's opinion, but the ALJ misconstrued that opinion as being a limitation to medium work with an ability to lift up to twenty-five pounds occasionally.

In another part of his decision, the ALJ explained that "Dr. Brater opined that the claimant was able to perform medium work." (Filing No. 12-2 at 45.) Further, the ALJ noted that "Dr. Farber specifically opined that the claimant does not have an impairment meeting or equaling a listing and could perform medium work. He expressed agreement with Dr. Brater's opinion that the claimant could lift twenty-five pounds occasionally." *Id.* However, neither of these conclusions is correct. Nowhere in Dr. Brater's medical record does she give an opinion that Mr. Hammond could perform medium work. Rather, she opined that he was limited to occasional lifting of twenty-five pounds. Additionally, Dr. Farber did not opine that Mr. Hammond should be limited to medium work, and he did not agree with Dr. Brater that Mr. Hammond could lift twenty-five pounds only occasionally.

The ALJ based the RFC determination on his misconception of Dr. Farber's testimony that Mr. Hammond can occasionally lift twenty-five pounds and perform medium work. Even if this was Dr. Farber's testimony, the decision could not be sustained because the Social Security regulations and rulings indicate that medium work requires lifting twenty-five pounds frequently, a task that appears to be beyond Mr. Hammond's capability based on the medical record. Because

of the internal inconsistency between an ability to only occasionally lift twenty-five pounds and an ability to perform medium work, the Court concludes that remand is appropriate for the ALJ to conduct further proceedings to determine a consistent RFC for Mr. Hammond and whether work exists in the national economy based on that RFC.

The Seventh Circuit recently explained, "[o]ne might think that even though he can't do medium work he can do light or sedentary work.  But his age makes the distinction between medium and light work critical: a person of his age who has no skills transferable to light or sedentary work is presumptively disabled." *Dimmett v. Colvin*, 2016 U.S. App. LEXIS 4643, at *5 (7th Cir. Mar. 14, 2016).  As the Commissioner pointed out, if the Court finds error in the ALJ's decision, the Court may reverse the ALJ's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g).  Finding a claimant disabled and reversing without remand "is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005).  "That determination is essentially a factual finding best left for the [Commissioner] to address in the first instance, unless the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993).  Furthermore, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman*, 546 F.3d at 462.  Thus, the Court determines that remand is appropriate here.

## V.  CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/23/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Frank Hanley, II
jfrankhanley@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov